FILED
2017 May-17  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **PAMELA LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **AMERICAN GENERAL LIFE** | ) | _____ |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW**, the Plaintiff, Pamela Lee, and in support of her Complaint says as follows:

## FACTS COMMON TO ALL COUNTS

1.     At all relevant times the Plaintiff was employed as an Industrial Systems Coordinator with Phifer Incorporated (hereafter "Phifer"). The Plaintiff worked for Phifer for approximately forty (40) years. Her position required her to stand, walk, bend, climb, squat, kneel, crouch and flex her trunk frequently. She was also required to push, pull, carry, lift, floor to waist and waist to floor, and to lift up to the weight for a medium duty job on a frequent basis.

2.     The Plaintiff's job required her to engage in tasks involving quality assurance of products made by Phifer. She spent most of her working hours in the factory ensuring that product lines met calibration and specification guidelines, and

when problems occurred with production, the Plaintiff's job was to resolve them and to restore factory production back to normal functioning. She was also required to generate reports and other documentation related to quality assurance.

3.     The Defendant American General Life Insurance Company (hereafter "AIG") is, upon information and belief, a foreign corporation that does business by agent or otherwise in the state of Alabama and provided a long-term disability policy of insurance for employees of Phifer, at all times relevant to this Complaint.

4.     The Plaintiff's job required her to have the capacity to work a minimum of approximately forty (40) to fifty (50) hours a week with reasonable continuity throughout the year.

5.     The Plaintiff's job was fast-paced requiring focus, attention to details, and organization.

6.     While employed at Phifer, the Plaintiff was a participant in a long-term disability plan which was underwritten and/or insured by AIG.

7.     AIG was the agent of and/or de facto plan administrator or the appropriate fiduciary for the Plaintiff's long-term disability policy throughout the claim process. The Plaintiff's employer, Phifer, had no involvement in the claim decision making process for the Plaintiff's long-term disability policy according to the Plaintiff's knowledge, information and belief.

8.     Upon information and belief, all claims decisions regarding the Plaintiff's long-term disability claim were made by AIG and/or by individuals who have been represented in correspondence to the Plaintiff as being employees/affiliates of AIG.

9.     The Plaintiff became unable to perform the duties of her occupation around March 2016 after suffering a massive right frontal intracranial hemorrhagic stroke at work.

10.    The Plaintiff was fifty-seven (57) years old at the time of her stroke. Prior to her stroke, the Plaintiff had a lengthy history of cardiac problems.

11.    She was diagnosed with a heart murmur caused by rheumatic fever when she was in her early 20's. Later, she was diagnosed with mitral valve stenosis, and by 1992, scar tissue had developed around the Plaintiff's valve to the point that she had to undergo a balloon procedure to have her value opened back up.

12.    Over the next ten (10) years, scar tissue developed again around the Plaintiff's valve, necessitating that she undergo another balloon procedure. By 2011, the Plaintiff's valve had closed off again and this time she entered into heart failure.

13.    Because the Plaintiff's condition was too progressed, her valve had to be replaced with a mechanical mitral valve prosthesis. The Plaintiff's valve was replaced at Emory Hospital in Atlanta, Georgia.

14.    Unfortunately, the Plaintiff experienced complications following her third cardiac surgery, and when she returned home from Georgia, she required hospitalization for an additional week. Eventually, her condition stabilized, and the Plaintiff returned to work, continuing on a blood thinner known as coumadin, which is prescribed after valve replacement and to treat atrial fibrillation.

15.    The Plaintiff continued to work for the next several years following her third heart surgery; however, on March 16, 2016 she suffered a stroke while at work. The Plaintiff remained in the hospital for the next couple of weeks, and was eventually released to undergo occupational therapy.

16.    She remained homebound with a caregiver while her husband was working.

17.    Eventually, her physical condition stabilized. However, the Plaintiff has remained cognitively impaired since her stroke.

18.    Due to her inability to return to work, the Plaintiff applied for long-term disability benefits. In a letter dated December 1, 2016, AIG advised the Plaintiff that her claim was denied due to a notation in her occupational therapy records indicating that there had been improvement in her short-term memory and attention. However, AIG ignored objective findings indicating that the Plaintiff suffered from a 25% loss of cognitive function. In its denial letter, AIG stated further that the Plaintiff's medical evidence indicated that she suffered from weakness and headaches, but there was no objective evidence of functional

deficits. Therefore, AIG concluded that there was insufficient evidence supporting the Plaintiff's claim.

19.     Via a letter dated January 25, 2017, the Plaintiff appealed AIG's decision to deny her claim, pointing out objective medical evidence of her cognitive deficits, including a post-stroke computed tomography scan from May 5, 2016 confirming residual brain injury with evidence of encephalomalacia surrounding her right frontal lobe.

20.     The Plaintiff also explained that, while she had improved from the initial effects of her stroke, her improvement did not equate to her being able to return to work. She pointed out information in her occupational therapy records which AIG ignored, including the average range of her cognitive deficits (i.e. maximum to moderate) with up to a 25% functional loss.

21.     Additionally, the Plaintiff's last occupational therapy note indicated that she continued to suffer minimal to moderate cognitive deficits, which marked a significant loss of functioning in terms of the Plaintiff's ability to perform her job, and also in terms of her ability to perform more than minimal activities of daily living.

22.     The Plaintiff also pointed out in her appeal that her cardiologist, Dr. Anand Pandey, stated in an attending physician statement dated July 6, 2016 that she

suffered from **"significant functional limitation and will not be able to return to work due to deficits from intracranial bleed."**

23.     In a meeting held and recorded on January 12, 2017, Dr. Pandey reiterated his medical opinions, explaining that the kind of stroke the Plaintiff suffered was very serious. He explained further that the improvement noted in the Plaintiff's occupational therapy records was only an indication that she had improved from the initial effects of her stroke, and not that she had improved sufficient to return to work. He also pointed out that work-related stress posed a significant risk for the Plaintiff due to the seriousness of her condition.

24.     Dr. Pandey also discussed his clinical observations of the Plaintiff and the significant changes he had seen in her since her stroke. Prior to the Plaintiff's stroke, Dr. Pandey described her as someone who was animated, motivated and intelligent. However, after her stroke, the Plaintiff began presenting with more of a blunted effect.

25.     Dr. Pandey confirmed her difficulties absorbing a lot of information and the general deterioration in her physical and cognitive/emotional state. He also noted that she moved a lot slower since suffering her stroke.

26.     Dr. Pandey also confirmed that the Plaintiff's reports of having difficulty typing and texting were consistent with common deficits caused by a stroke, as these tasks require mental coordination.

27.     In addition to submitting the transcript and recording of the meeting with Dr. Pandey on January 12, 2017, the Plaintiff also submitted a declaration signed by her and her husband to AIG in support of her appeal, detailing her daily struggles since her stroke. One struggle noted involved the Plaintiff's difficulties with becoming fatigued quicker and after engaging in minimal activities such as running a couple of errands. The Plaintiff and her husband also discussed her memory deficits, which led to her husband having to administer her medications.

28.     The Plaintiff and her husband also discussed her difficulty with organization, which was one of the Plaintiff's strengths prior to her stroke. After her stroke, however, a trip to the grocery store became an arduous task due to the Plaintiff's difficulty mentally processing what she needed to buy.

29.     The Plaintiff and her husband also noted that she was very independent prior to her stroke, but now relied on her husband to take care of household chores and household finances.

30.     Just prior to the Plaintiff's submission of her appeal to AIG, she suffered two transient ischemic attacks (TIA's/mini-strokes). The Plaintiff and her husband stated in their declaration that the Plaintiff noticed her elevated heart rate one day while feeding her dogs. She told her husband, who gave medication to her to try and slow her heart rate. However, the following morning, the Plaintiff's heart rate was still elevated. Additionally, the left side of her face had become numb and her

speech was slightly slurred. Therefore, her husband took her to the hospital and she was diagnosed with having suffered mini-strokes due to the formation of blood clots.

31.     During the meeting held on January 12, 2017, Dr. Pandey confirmed the Plaintiff's recent mini-strokes due to difficulty regulating the dosage of her blood thinner, coumadin. Dr. Pandey explained that if the Plaintiff gets too much coumadin, then this can result in bleeding in her brain which occurred with her stroke in March 2016. However, if she gets too low a dosage of coumadin, it can result in the formation of blood clots as occurred with her TIA's.

32.     After her mini-strokes in January 2017, the Plaintiff was required to have her blood checked three (3) to four (4) times a day.

33.     In further support of her appeal, the Plaintiff submitted a signed statement from her supervisor, Daryl Mims. In his statement, Mr. Mims stated that the Plaintiff was the best employee he ever supervised, and that he still felt the effect of her absence even after a year. He noted that she was a very valuable employee because she was so meticulous and organized, which were critical skills required for her job. He indicated that the Plaintiff was very alert and made good, sound decisions in a timely manner.

34.     However, after the Plaintiff's stroke, she returned to work for her going away party, and Mr. Mims noted being overwhelmed by her appearance and

demeanor. He stated that she was delayed in her communication and much more reserved, to the point that the Plaintiff did not appear to be the same person he knew before, who could walk the length of a forty (40) acre property and interact with others without difficulty. Based on his personal observations of the Plaintiff, Mr. Mims stated that he knew she could no longer perform her prior job.

35.    Mr. Mims also stated that he believed the Plaintiff would not have stopped working unless she had no other choice, as she valued her job and she was a valued employee at the company.

36.    Despite the issues addressed in the Plaintiff's appeal, including her recent strokes, AIG denied her appeal.

37.    In a letter dated March 3, 2017, AIG noted its consideration of the information submitted by the Plaintiff, which included her appeal letter and supporting evidence. Even though the Plaintiff submitted the signed statement from her supervisor prior to AIG's decision of her appeal, AIG did not mention that this information was considered in its review.

38.    Essentially, AIG indicated denying the Plaintiff's appeal for the same reasons it denied her initial claim. AIG stated that there was insufficient evidence supporting the ongoing difficulties suffered by the Plaintiff, and that essentially, she could perform her prior job since she could perform activities of daily living. AIG adopted its opinions from an occupational medicine physician, Dr. Marvin

Pietruszka, who is believed to be a regularly utilized physician consultant by disability insurance carriers like AIG, who are seeking medical opinions favorable to their economic interests.

39.    AIG also obtained a medical review of the Plaintiff's file from a psychiatrist, who stated that there were inconsistencies in some of her medical records, which noted on the one hand that the Plaintiff displayed cognitive deficits including short-term memory loss, attention and concentration affecting her ability to live independently, yet her attention and concentration were noted to be within functional limits.

40.    AIG and its psychiatrist physician consultant failed to seek clarification of these alleged inconsistencies in the Plaintiff's medical records. They also failed to consider the statement regarding the Plaintiff's attention and concentration as a referenced to her ability to do some things independently, but not necessarily others, including giving herself medication.

41.    AIG and its physician consultants also failed to regard the fact that the Plaintiff's reported deficits are common effects of a stroke as serious as hers.

42.    AIG and its physician consultants failed to give any weight to the Plaintiff's lengthy medical history or her lengthy work history. Instead, AIG and its physician consultants simply discounted this information and the severity of her stroke, making it appear as if her condition was expected to return to baseline.

43.    AIG and its physician consultants failed to account for the known long-term/permanent effects that can occur from the type of stroke suffered by the Plaintiff, including weakness, confusion, memory loss, difficulty with attention and concentration, and difficulty communicating.

44.    The Plaintiff has remained unable to work full-time in any occupation since on or about March 16, 2016.

45.    AIG has failed to show improvement in the Plaintiff's condition since she left work, sufficient for her to return to her job.

46.    The Plaintiff has exhausted all claim remedies and/or no further exhaustion of remedies is required. Alternatively, the Plaintiff has exhausted all known claim remedies as to all claims, or further efforts at exhaustion would be futile.

## COUNT ONE

47.    The Plaintiff incorporates by reference all previous paragraphs of this Complaint as if set out in full.

48.    This Count is brought regarding the Plaintiff's long-term disability policy under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover benefits, damages, and attorney's fees as may be recoverable under this code provision and 29 U.S.C. § 1132(g). The Plaintiff seeks to enforce her rights under the long-term disability plan in question.  This plan is an employee benefit plan that appears to be regulated

by the Employee Retirement Income Security Act (hereafter ERISA), 29 U.S.C. §
1001 *et seq.*

49.     On or around December 1, 2016 and March 3, 2017, AIG wrongfully and in
violation of obligations under ERISA, denied long-term disability benefits to the
Plaintiff.  AIG has continued to deny benefits to the Plaintiff since that time.  AIG
failed to conduct a full and fair review of this claim.

**WHEREFORE,** the Plaintiff demands judgment against the Defendant as
follows:

        a.      For a de novo review of this claim;

        b.      For the sum of all past due long-term disability benefits;

        c.      For reinstatement of the Plaintiff's claim to all present and
future long-term disability benefits under the Plan;

        d.      For an award of attorney's fees;

        e.      For interest on all past due benefits; and

        f.      For such other further or different relief as may be just and
proper under 29 U.S.C. § 1132(a)(1)(B).

## COUNT TWO

50.     The Plaintiff incorporates by reference all previous paragraphs of this
Complaint as if set out in full.

51.     This Count is brought pursuant to 29 U.S.C. § 1132(c).

52.    AIG is the plan administrator or "de facto" plan administrator or fiduciary performing or assuming duties of "any administrator" and/or is the agent for others who had an obligation to comply with requests for information regarding the Plaintiff's long-term disability claim, which were required by law to be furnished under 29 U.S.C. § 1132(c). AIG did not provide any plan documents showing that another entity such as the Plaintiff's employer is the named plan administrator.

53.    Under 29 U.S.C. § 1024 and 1029, the Secretary of Labor prescribes what documents must be furnished.

54.    AIG has breached its fiduciary duties by failing to produce the summary plan description, claim manual, guidelines and protocols, and all other documents/facts considered and/or relied upon in deciding to deny the Plaintiff's benefits under the long-term disability policy.

55.    These documents were requested by the Plaintiff from AIG on March 14, 2017.

56.    In a letter dated March 21, 2017, AIG responded to the Plaintiff's requests for plan documents by refusing to provide this information on the basis that AIG's claims handling practices are proprietary and confidential. As to the other pre-litigation requests, AIG stated in its letter that it was declining to disclose this information, but did not state a reason for its refusal to provide this information to the Plaintiff.

57.     The documents and information requested were known to be solely in the possession of AIG and are believed to be currently in the possession of AIG. However, AIG has not complied with the above requests for information in violation of its statutory duties and/or delegated or assumed duties.

58.     The Plaintiff has exhausted all claim remedies and/or no further exhaustion of remedies is required. Alternatively, the plaintiff has exhausted all known claim remedies as to all claims, or further efforts at exhaustion would be futile.

**WHEREFORE,** the Plaintiff demands judgment against the Defendant as follows:

a.     For an award of $110.00 per day for each day the Defendant did not provide the information for which it was required to provide and continuing until such time as the Court finds the Defendant has satisfactorily provided all information requested;

b.     For an award of attorney's fees;

c.     For such other further or different relief as may be just and proper under 29 U.S.C. § 1132(c).

Ariel S. Blocker
(ASB-0090-Z82A)

- 14 -

David P. Martin
(ASB-3500-M68D)

Attorneys for the Plaintiff
Pamela Lee
The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL  35402
Ph. (205) 343-1771
Fax (205) 343-1781
arielsblocker@erisacase.com

**Plaintiff's Address:**
Pamela Lee
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL  35402-0087

**Defendant's Address:**
American General Life Insurance Company
c/o Agent for Service of Process CSC Lawyers, Inc.
150 South Perry Street
Montgomery, AL  36104

**To be served regarding the statutory penalty claim:**

Secretary of Labor
c/o R. Alexander Acosta
200 Constitution Avenue, N.W.
Washington, D.C.  20210

Secretary of Treasury
c/o Steven Turner Mnuchin
1500 Pennsylvania Avenue, N.W.
Washington, D.C.  20220